# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| CHARLES ALLEN RIDEOUT, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:18-cv-00664** |
| v. | ) | **Chief Judge Crenshaw** |
| | ) | **Magistrate Judge Brown** |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| **Defendant.** | ) | |

To: The Honorable Waverly D. Crenshaw, Jr., Chief United States District Judge

## REPORT AND RECOMMENDATION

Pending before the court is Plaintiff's motion for judgment on the administrative record (Docket Entry No. 19), to which Defendant Commissioner of Social Security ("Commissioner") filed a response (Docket Entry No. 22). Plaintiff has filed a reply to Defendant's response. (Docket Entry No. 23). Upon consideration of the parties' filings and the transcript of the administrative record (Docket Entry No. 12),[2] and for the reasons given herein, the Magistrate Judge **RECOMMENDS** that Plaintiff's motion for judgment be **DENIED** and that the decision of the Commissioner be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff, Charles Allen Rideout, filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act on January 27, 2015, alleging disability onset as

---

[1]Andrew M. Saul became Commissioner of the Social Security Administration on June 17, 2019, and is therefore substituted as Defendant. *See* Fed. R. Civ. P. 25(d).

[2]Referenced hereinafter by page number(s) following the abbreviation "Tr."

of July 1, 2013, due to type 2 diabetes, ADHD, anxiety, depression, high blood pressure and high cholesterol. (Tr. 12, 44, 145). Plaintiff's claim was denied at the initial level on July 1, 2015, and on reconsideration on December 29, 2015. (Tr. 12, 79, 83). Plaintiff subsequently requested *de novo* review of his case by an administrative law judge ("ALJ"). (Tr. 12, 89, 91). The ALJ heard the case on July 19, 2017, when Plaintiff appeared with counsel and gave testimony. (Tr. 12, 24-39). Testimony was also received by a vocational expert. (Tr. 39-40). At the conclusion of the hearing, the matter was taken under advisement until January 9, 2018, when the ALJ issued a written decision finding Plaintiff not disabled. (Tr. 12-19). That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since July 1, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following medically determinable impairments: obstructive sleep apnea, hypertension, diabetes mellitus type II, degenerative disc disease, hyperlipidemia, chronic fatigue syndrome, obesity, hyperlipidemia, attention-deficit hyperactivity disorder (ADHD), depression, and anxiety (20 CFR 404.1521 *et seq.*).

4. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.*).

5. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2013, through the date of this decision (20 CFR 404.1520(c)).

(Tr. 14, 19).

2

On May 14, 2018, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5), thereby rendering that decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. REVIEW OF THE RECORD

The following summary of the medical record is taken from the ALJ's decision:

The claimant was diagnosed with anxiety, depression, sleep apnea, and ADHD several years before the alleged onset date and continued to work despite the conditions (Ex. 4F/2-3). In November of 2013, Robert Mangialardi, MD, confirmed obstructive sleep apnea, controlled with CPAP (Ex. 1F/2). In April of 2015, Murail Kolli, MD, confirmed unspecified chest pain, generalized hyperhidrosis (excessive sweating), intermediate coronary syndrome, diabetes without complication, hyperlipidemia, hypertension, gastro-esophageal reflux disease (GERD), and history of abdominal aortic aneurysm (Ex. 2F/1). Dr. Kolli found the hypertension to be well-controlled on medication (Ex. 2F/7). In May of 2015, Dr. Hanket found the claimant's anxiety to be mainly in remission with treatment (Ex. 4F/4). Through most of 2015, Deepinder Bal, MD, reported that hypertension and hyperlipidemia were controlled or at goal (Ex. 5F/2). The claimant generally only attended annual physical exams without need for condition management (Ex. 9F/23). In 2016, Dr. Ball generally found the claimant to be doing well on medications (Ex. 9F/27). There were no hospitalizations for uncontrolled blood sugar or heart complaints. The observations of treating physicians, the extremely conservative medical management of conditions, and the lack of emergency or intensive medical care do not support more than minimal limitations.

The medical images and laboratory findings do not show at least minimal limitations (20 CFR 404.1512(b); 404.1529(c); SSR 16-3p, 96-8p).In April of 2015, EKGs showed asymptomatic right bundle branch block. Cardiac enzymes and chest x-rays were normal (Ex. 2F/5). A stress test showed no ischemic changes, adequate blood pressure and heart rate response, and low risk for cardiac chest pain due to unremarkable results (Ex. 2F/26). In October of 2016, a CT scan of the abdomen showed small inguinal hernias, multilevel degenerative changes, severe central canal stenosis at two levels, moderate canal stenosis at one level, minimal atherosclerotic disease in the abdominal aorta, and otherwise normal organs and bony structures (Ex. 7F/23). In October of 2016, a colonoscopy showed minimal diverticulosis (Ex. 9F/5-6). Pelvis ultrasound showed moderate post-void residual in the urinary bladder (Ex. 9F/10). The negative tests, the mild symptoms associated with findings (reviewed below), and the incidental findings without objective clinical signs (reviewed below) do not support more than minimal physical limitations.

3

The clinical signs[FN1] do not show significant limitations (20 CFR 404.1529(c); SSR 16-3p; 96-8p). In 2013, Dr. Mangialardi reported a completely normal physical examination aside from obesity (Ex. lF/3). In April of 2015, the claimant appeared at the emergency department with epigastric and chest pain with some nausea. Dr. Kolli linked symptoms to GERD, which abated with medication. Hospital physicians noted obesity with a body mass index (BMI) of 35 but otherwise reported normal physical exams with negative cardiovascular, gastrointestinal, respiratory, neurological, and musculoskeletal signs (Ex. 2F/6, 17). Post hospitalization, Dr. Kolli reported normal physical exams except for asymptomatic hyperlipidemia (Ex. 3F/1). From the alleged onset date through October of 2016, Deepinder Bal, MD, reported obesity (BMI in the 30s), elevated triglycerides, and elevated blood sugars depending on dietary and medication compliance. Regardless of blood sugar and cholesterol, Dr. Bal recorded grossly normal physical examinations with no objective deficit of functioning in any body system (Ex. 5F). In 2016, ED physicians noted one instance of subjective abdominal pain, one instance of earache, and obesity but otherwise normal physical exams with intact motor strength in all extremities, gait, ambulation, and neurological signs (Ex. 7F; 8F). Dr. Bal noted improving obesity, mildly elevated blood pressure, one instance of flank pain to palpation due to strain, and one instance of constipation with blood in stool. Otherwise, Dr. Bal reported negative physical exams with normal eyes, cardiovascular signs, respiratory signs, extremities, foot exam, and psychological signs (Ex. 9F). These generally negative physical exams do not support more than minimal physical limitations.

> FN1. "Signs" are anatomical, physiological, or psychological abnormalities which can be observed apart from the claimant's statements, and must be shown by medically acceptable clinical and diagnostic techniques (20 CFR 404.1528(b)).

. . . . In May of 2015, Jennifer Hanket, PsyD, found only 'low average' intellect. She reported normal appearance, grooming, hygiene, behavior, eye contact, alertness, orientation, speech, affect, perception, thought content, thought process, insight, judgment, and cooperation. The claimant could recall three items immediately and after a delay; he had little to no difficulty concentrating on the exam; reported no history of suicidal or homicidal ideation. At the time, the claimant made no complaints of psychiatric conditions but reported that he was treated for anxiety and depression in 2006 and continues to take medications (Ex. 4F/2). There were no positive psychiatric signs recorded by treating physicians in the record (Ex. 1F; 2F; 5F; 7F; 8F). This supports only mild limitations in the major areas of mental functioning.

. . . .

. . . . In January of 2014, the claimant reported to Dr. Bal that he was doing well (Ex. 5F/20). In April of 2015, in a follow up after ED appearance, the claimant reported

to Dr. Kolli that his pain resolved on GERD medications, that his overall activity level is unchanged, and that he has no other physical complaints (Ex. 3F/1). In May of 2015, the claimant told Dr. Hanket that he can dress, shave, clean the house, mow the lawn, sweep floors, shop in stores, use a checkbook, bathe, eat, wash clothes, make beds, handle money, take medications, and cook (Ex. 4F/4). In September of 2016, the claimant was working under cars (Ex. 8F/13; 9F/19).

(Tr. 16-18).

## III. CONCLUSIONS OF LAW

### A. Standard of Review

Review of the Commissioner's disability decision is narrowly limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the right legal standards in reaching the decision. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). "Substantial evidence requires 'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). In determining whether substantial evidence supports the Commissioner's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387 (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270,

5

273 (6th Cir. 1997)). "This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton*, 246 F.3d at 773 (citations omitted). However, where an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." *Miller,* 811 F.3d at 833 (citation and internal quotation marks omitted).

### B. Administrative Proceedings

The claimant has the ultimate burden of establishing his or her entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("[T]he claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). The Commissioner applies a five-step inquiry to determine whether an individual is disabled within the meaning of the Social Security Act, as described by the Sixth Circuit as follows:

> (1) a claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings; (2) a claimant who does not have a severe impairment will not be found to be disabled; (3) a finding of disability will be made without consideration of vocational factors if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four; (4) a claimant who can perform work that he has done in the past will not be found to be disabled; and (5) if a claimant cannot perform his past work, other factors including age, education,

6

past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. §§ 404.1520; 416.920. The claimant bears the burden through step four of proving the existence and severity of the limitations his impairments cause and the fact that he cannot perform past relevant work; however, at step five, "the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . ." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 628 (6th Cir. 2016) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

The Social Security Administration can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. *See Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010); *Wright v. Massanari*, 321 F.3d 611, 615-16 (6th Cir. 2003). The grids otherwise only function as a guide to the disability determination. *Wright*, 321 F.3d at 615-16; *see also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert ("VE") testimony. *Anderson*, 406 F. App'x at 35; *see Wright*, 321 F.3d at 616 (citing SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity ("RFC") at steps four and five, the Commissioner must consider the combined effect of all the claimant's impairments, mental and

7

physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B), (5)(B); *Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)).

### C. Claim of Error

Plaintiff contends that the ALJ erred by finding at step two of the sequential evaluation process that Plaintiff did not have a severe impairment, as the ALJ improperly discounted the opinion of Plaintiff's 30-year treating physician in favor of the ALJ's own lay opinion. (Docket Entry No. 19-1, at 8). In response, Defendant contends that the ALJ properly reviewed the record as a whole and in doing so properly considered Plaintiff's work activity, the improvement of Plaintiff's allegedly limiting impairments through conservative treatment, the objective medical evidence in assessing Plaintiff's subjective allegations, and the conflicting medical opinions in the record. (Docket Entry No. 22, at 3-4).

At step two of the sequential evaluation process, a plaintiff bears the burden of showing that a medically determinable impairment is severe and meets the twelve month durational requirement of the Act. *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803-04 (6th Cir. 2012). Symptoms alone cannot constitute a "medically determinable impairment." SSR 96-4p, 1996 WL 374187, at *2 (S.S.A. July 2, 1996); *see id.* at *1 ("No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment."). A "severe impairment" is "any impairment or combination of impairments which significantly limits [the plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).[3] The Sixth Circuit has described the severity

---

[3]Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for

8

determination as "a *de minimis* hurdle in the disability determination process," in which "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The goal of this test is to screen out groundless claims. *Id.* at 863. Although "[s]everity is not an onerous requirement for the claimant to meet, . . . it is also not a toothless standard[.]" *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007); *Harley*, 485 F. App'x 802 (citing two physicians' reports that conflicted with the plaintiff's treating physician's opinion, the Sixth Circuit affirmed the Commissioner's finding of no severe impairment); *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929-30 (6th Cir. 2007) (holding that the ALJ's decision was supported by substantial evidence where the record did not reflect an inability to perform basic work functions). Further, a diagnosis alone does not establish an impairment's severity. *Despins*, 257 F. App'x at 930 ("The mere existence of . . . impairments . . . does not establish that [the plaintiff] was significantly limited from performing basic work activities for a continuous period of time."); *Higgs*, 880 F.2d at 863 ("[M]ere diagnosis of arthritis . . . says nothing about the severity of the condition."); *Asbury v. Comm'r of Soc. Sec.*, No. 14-CV-13339, 2016 WL 739658, at *3 (E.D. Mich. Feb. 25, 2016) ("[D]iagnoses themselves generally do not establish disability; rather, disability is determined by the functional impairments caused by the diagnosis or condition. . . . And a diagnosis of a condition, without more, does not speak to the severity of the condition or the functional limitations associated with it."). "'In considering whether a claimant has a severe impairment, an ALJ must not accept unsupported

---

seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 CFR § 404.1521(b) (now 20 C.F.R. § 404.1522(b)).

medical opinions or a claimant's subjective complaints.'" *Wilkins v. Comm'r of Soc. Sec.*, No. 13-12425, 2014 WL 2061156, at *13 (E.D. Mich. May 19, 2014) (citations omitted).

When making an assessment of mental impairments at step two, "the regulations require the ALJ to follow a 'special technique' to assess the severity of the impairment." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013). Under the special technique, a plaintiff's pertinent symptoms, signs, and laboratory findings must be first evaluated to determine whether the plaintiff has a medically determinable mental impairment. 20 C.F.R. §404.1520a(b)(1). The ALJ will then rate the degree of the plaintiff's functional limitation in four broad areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3) (2015).[4] For the first three areas, the ALJ will rate the plaintiff on a five-point scale: "[n]one, mild, moderate, marked, and extreme." *Id*. § 404.1520a(c)(4). Decompensation is rated on a four-point scale: "[n]one, one or two, three, four or more." *Id.* If the degree of the plaintiff's limitation in the first three functional areas is rated "as 'none' or 'mild' and 'none' in the fourth area," the ALJ will generally conclude that the plaintiff's impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the plaintiff's ability to do basic work activities. *Id*. § 404.1520a(d)(1).

The ALJ considered Plaintiff's allegations concerning the nature, intensity, frequency, persistence, and limiting effects of all mental and physical symptoms throughout the affected period and concluded that Plaintiff's treatment history did not support Plaintiff's allegations. (Tr. 15-16).

---

[4]In 2017, new SSA regulations came into effect. The newest regulations apply only to claims filed with the SSA on or after March 27, 2017. Thus, the Magistrate Judge applies the regulations that were in effect at the time of Plaintiff's filing on January 27, 2015. *Janeczek v. Comm'r of Soc. Sec.*, No. 1:18-CV-629, 2018 WL 6419995, at *4 (W.D. Mich. Dec. 6, 2018) (collecting cases); *see* 20 C.F.R. § 404.614 (generally, an application for benefits is deemed filed on the day it is received by an SSA employee).

The ALJ examined Plaintiff's treatment history and noted that Plaintiff was diagnosed with anxiety, depression, sleep apnea, and ADHD several years before the alleged onset date and continued to work despite the conditions. (Tr. 16, 157, 296). Plaintiff reportedly had lived with bulging discs for 16 to 18 years. (Tr. 296). The ALJ noted that Plaintiff's obstructive sleep apnea was controlled with CPAP; that Dr. Kolli found Plaintiff's hypertension to be well-controlled with medication; that Dr. Hanket found Plaintiff's anxiety to be mainly in remission with treatment; that through most of 2015, Dr. Bal reported that Plaintiff's hypertension and hyperlipidemia were controlled or at goal; that Plaintiff generally only attended annual physical examinations without need for condition management; that in 2016, Dr. Ball generally found Plaintiff to be doing well on medications; and that there were no hospitalizations for uncontrolled blood sugar or heart complaints. (Tr. 16, 230, 235, 241, 298, 301, 451-52, 456). In July 2016, Dr. Bal noted "no limitations" in regard to Plaintiff's "accustomed activities." (Tr. 451). Plaintiff did not receive any treatment between June 2015 and February 2016. (Tr. 16, 300, 455). As a result, the ALJ concluded that the "observations of treating physicians, the extremely conservative medical management of conditions, and the lack of emergency or intensive medical care [did] not support more than minimal limitations." (Tr. 16).

The ALJ also concluded that the medical images and laboratory findings did not show at least minimal limitations, stating that the negative tests, the mild symptoms associated with the findings, and the incidental findings without objective clinical signs did not support more than minimal physical limitations. (Tr. 16). The ALJ cited April 13, 2015, medical records that showed that Plaintiff's cardiac enzymes and chest x-rays were normal and that a stress test showed no ischemic changes, adequate blood pressure and heart rate response, and low risk for cardiac chest pain due to unremarkable results. (Tr. 16, 239, 260).

11

The ALJ also noted that in October 2016, a CT scan of the abdomen showed small inguinal hernias, multilevel degenerative changes, severe central canal stenosis at two levels, moderate canal stenosis at one level, minimal atherosclerotic disease in the abdominal aorta, and otherwise normal organs and bony structures. (Tr. 16, 373). Plaintiff therefore argues that the ALJ should have found that his degenerative disc disease was a severe impairment "based on imaging alone." (Docket Entry No. 19-1, at 10). However, as explained by the ALJ, the clinical signs did not show significant physical limitations. (Tr. 16). The ALJ noted that in 2013, Dr. Mangialardi reported a completely normal physical examination aside from obesity. (Tr. 16, 231). Plaintiff had chest pain in April 2015, but Dr. Kolli linked his symptoms to gastroesophageal reflux disease ("GERD") that resolved with medication. (Tr. 16, 240-41). Physicians noted obesity with Plaintiff having a BMI of 35, but otherwise reported normal physical examinations with negative cardiovascular, gastrointestinal, respiratory, neurological, and musculoskeletal signs. (Tr. 16, 251). Post hospitalization, Dr. Kolli reported normal physical examinations except for asymptomatic hyperlipidemia. (Tr. 16, 290).

The ALJ noted that regardless of blood sugar and cholesterol, Dr. Bal recorded grossly normal physical examinations with no objective deficit of functioning in any body system. (Tr. 16-17, 300-42). In 2016, physical examinations by emergency department medical providers showed normal physical examinations with intact motor strength and range of motion in all extremities, and normal gait, ambulation, and neurological signs. (Tr. 17, 356, 363, 389, 414). Plaintiff also declined pain medication. (Tr. 366). The ALJ noted that Dr. Bal reported negative physical examinations with normal eyes, cardiovascular signs, respiratory signs, extremities, foot examination, and psychological signs. (Tr. 17, 444-45, 448, 451-52, 455-56). Thus, the ALJ properly concluded that these generally negative physical examinations did not support more than minimal physical

12

limitations.  Plaintiff merely relies on the CT scan that shows severe central canal stenosis at two levels and moderate canal stenosis at one level, but fails to cite to any medical examinations in the record that show that Plaintiff suffered any physical limitations as a result.  Plaintiff has the burden of proving the severity of his impairments.  *Higgs*, 880 F.2d at 863.

The ALJ also concluded that Plaintiff's statements about the level of impairment, restrictions, activities, and efforts to work did not support Plaintiff's allegations.  (Tr. 17).  In support, the ALJ cited that in January 2014, Plaintiff reported to Dr. Bal that he was doing well, and that in April 2015 Plaintiff reported to Dr. Kolli that his pain resolved on GERD medications, that his overall activity level was unchanged, and that he had no other physical complaints.  (Tr. 17, 319, 290).  As to activities of daily living, in May 2015, Plaintiff told Dr. Hanket that he could dress, shave,  clean the house,  mow the lawn, sweep floors, shop in stores, use a checkbook, bathe, eat, wash clothes, make beds, handle money, take medications, and cook.  (Tr. 17, 298).  In September 2016, Plaintiff was working under cars.  (Tr. 18, 387, 448).  At the ALJ hearing, Plaintiff testified that he was working at Beaman Automotive and drove between dealerships to pick up cars from Atlanta, Memphis, and Murfreesboro; that he worked twenty hours a  week at most; that he sometimes would drive eight hours for work; that he retired from General Mills in 2013; and that he could lift up to thirty pounds comfortably.  (Tr. 18, 28-33).  Plaintiff testified his stomach problems would "come[] and go[]" and only lasted overnight.  (Tr. 18, 34).  Plaintiff also testified that he watched television, did laundry, vacuumed, drove, and shopped; that he sometimes repaired things for money and did handyman work; and that he and his wife took trips to the mountains in their travel trailer.  (Tr. 18, 35-38).  Based on this evidence, the ALJ concluded that these activities and statements did "not suggest that [Plaintiff's] daily activities and physical abilities [were] not

minimally affected by his conditions and that he [was] generally able to perform normally." (Tr. 18).

The ALJ further concluded that the "mental status signs [did] not show at least minimal limitations." (Tr. 17). The ALJ cited that Dr. Hanket noted Plaintiff's normal appearance, grooming, hygiene, behavior, eye contact, alertness, orientation, speech, affect, perception, thought content, thought process, insight, judgment, and cooperation. (Tr. 17, 296-98). Plaintiff could recall three items immediately and after a delay; had little to no difficulty concentrating; and reported no history of suicidal or homicidal ideation. (Tr. 17, 297). Plaintiff did not make any complaints of psychiatric conditions, but reported that he was treated for anxiety and depression in 2006 and continued to take medications. (Tr. 17, 296). The ALJ further noted that there were no positive psychiatric signs recorded by treating physicians in the record. (Tr. 17).

Based upon the medical evidence in the record, the ALJ concluded that the medical evidence supported only mild limitations in the major areas of mental functioning. (Tr. 17). The ALJ explained:

> Because the claimant has medically determinable mental impairments, the undersigned has considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad areas of mental functioning are known as the "paragraph B" criteria. The evaluation was based on the mental status signs and psychological evaluations summarized above. The normal findings in orientation, mood, thought process, associations, thought content, memory, and calculations support mild limitations in understanding, remembering, or applying information. The normal findings in appearance, speech tone and volume, behavior, level of cooperation, and eye contact support mild limitations in interacting with others. The normal findings in speech quantity, alertness, attention span, focus on topic or concentration, perception, and serial seven calculations support mild limitations in concentrating, persisting, or maintaining pace. The normal findings in hygiene, grooming, affect, judgment, fund of information, response to questions, and mood control in exams support mild limitations in the area of adapting or managing oneself. Because the claimant's

14

medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas, they are nonsevere (20 CFR 404.1520a(d)(1)).

(Tr. 17).

As to the opinion evidence, the ALJ considered that in May 2015, Dr. Hanket opined that Plaintiff would have no difficulties understanding, remembering, and completing simple instructions; making simple work-related judgments; understanding or remembering complex instructions; making complex decisions; or interacting with others. (Tr. 18, 298). The ALJ noted that Dr. Hanket advised that Plaintiff might have mild difficulties responding to change and stress. (Tr. 18, 298). In giving great weight to Dr. Hanket's opinion, the ALJ explained that Dr. Hanket was the only specialist to perform a mental evaluation on Plaintiff and that the findings were "consistent with the lack of counseling and therapy and the negative psychiatric signs throughout the record." (Tr. 18). The ALJ also considered the June 2015 opinion of State agency consultant, George Livingston, who found mild limitations in all major areas of mental functioning and opined that Plaintiff's mental impairments were non-severe. (Tr. 18, 50). The ALJ also gave great weight to the December 2015 opinion of State agency consultant and specialist, Dr. Maurice Prout, , whose opinion was supported with specific citations from the record. (Tr. 18, 62-63).

Plaintiff argues that the ALJ erred in finding that he did not have a severe mental impairment as the ALJ never examined the effects that stress would have on Plaintiff's ability to perform work based on Dr. Hanket's and Dr. Viers's opinion that Plaintiff may have "mild difficulties" in responding to change and stress at times. (Docket Entry No. 19-1, at 11; Tr. 298). However, Plaintiff fails to show how having "mild difficulties,"at times, in responding to change and stress contradicts the ALJ's conclusion that Plaintiff had "mild limitations" from his mental impairments. The ALJ properly considered all of the evidence and rated Plaintiff's functional limitations as mild.

15

The regulations provide that mild limitations do not constitute a severe impairment. *See* 20 C.F.R. § 404.1520a(d)(1). Plaintiff cites SSR 85-15 in support of his argument, but that ruling does not govern at Step Two of the sequential analysis. *Sims v. Comm'r of Soc. Sec.*, No. 16-11381, 2017 WL 9473401, at *7 (E.D. Mich. Mar. 23, 2017), *report and recommendation adopted*, No. 16-11381, 2017 WL 2982274 (E.D. Mich. July 13, 2017) (citing *Ratsamy v. Colvin*, No. 12-3400, 2013 WL 4446988, at *4 (E.D. Pa. Aug. 19, 2013) ("'[SSR 85-15] provides guidelines to be applied after it has already been determined at step two that a claimant has a severe impairment.'")).

Plaintiff also argues that the ALJ discounted the disabling opinion of Dr. Bal, Plaintiff's treating physician of thirty years, without a contradictory opinion. (Docket Entry No. 19-1, at 9). Social Security regulations address three classifications of medical sources: treating sources; examining but non-treating sources; and non-examining sources. 20 C.F.R. § 404.1527; 20 C.F.R. § 404.1502. A treating source has a history of medical treatment and an ongoing treatment relationship with the plaintiff consistent with accepted medical practice. *Id*. § 404.1527. An examining non-treating source has examined the plaintiff, but does not have an ongoing treatment relationship. *Id*. A non-examining source is a physician, psychologist, or other acceptable medical source who has not examined the plaintiff, but provides a medical or other opinion based upon medical and treatment records. *Id*. The opinion of an examining non-treating source is given greater weight than that from a non-examining source, and an opinion from a treating source is afforded greater weight than an examining non-treating source. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1502, 404.1527(c)(1), (2)). "[W]hen the physician is a specialist with respect to the medical condition at issue," the specialist's "opinion is given more

16

weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing 20 C.F.R. § 404.1527([c])(5)).

"A treating physician's opinion is normally entitled to substantial deference, but the ALJ is not bound by that opinion. The treating physician's opinion must be supported by sufficient medical data." *Jones*, 336 F.3d at 477 (citation omitted). Thus, "[i]f the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for her rejection." *Id*. The ALJ must give treating-source opinions "'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)). If the ALJ does not accord the treating physician's opinion "controlling weight," then the ALJ must weigh the opinion based on a number of factors in 20 C.F.R. § 404.1527(c), including: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406. "However, in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Rogers*, 486 F.3d at 242 (citing SSR 96-2p, 1996 WL 374188, at *4). "The ALJ need not perform an exhaustive, step-by-step analysis of each factor; she need only provide 'good reasons' for both her decision not to afford the physician's opinion controlling weight and for her ultimate weighing of the opinion." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017).

17

The regulations provide that an ALJ must provide "good reasons" for discounting the weight of a treating source opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley*, 581 F.3d at 406-07 (quoting SSR 96-2p, 1996 WL 374188, at *5). The Sixth Circuit has explained that "a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243. Failure to comply with the "good reasons" requirement, however, may be deemed harmless error. *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011). "If an ALJ rejects a treating physician's opinion but gives no reasons for doing so, it is difficult for a reviewing court to conduct its own analysis and make a judgment as to what the ALJ's reasons would have been-unless . . . the treating physician's opinion is 'so patently deficient that the Commissioner could not possibly credit it.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 657 (6th Cir. 2009)) (quoting *Wilson*, 378 F.3d at 547); *Watters v. Comm'r of Soc. Sec. Admin.*, 530 F. App'x 419, 423 (6th Cir. 2013).

In July 2015, Dr. Bal submitted a medical source statement opining that Plaintiff could stand for five to fifteen minutes at a time; could walk one to two blocks before resting; could infrequently stoop; should not climb; must avoid extreme work environments; could frequently lift twenty pounds; could occasionally use hands for fine manipulation; could frequently reach and perform gross manipulation; experienced moderately severe pain; would need to elevate his legs four to five times a day; and would need to lie down for about ten to fifteen minutes during the day. (Tr. 18,

349-50). The ALJ noted that Dr. Bal was a long term treating physician who perform annual primary care examinations. (Tr. 18). The ALJ gave Dr. Bal's opinion little weight, explaining that "Dr. Bal's limitations [were] not consistent with his own physical findings or claimant's reported activities." (Tr. 18). The ALJ noted that "Dr. Bal continuously reported normal eyes, neck, cardiovascular signs, respiratory signs, gait, peripheral joints, spinal inspection, extremities, peripheral pulses, sensation, reflexes, and diabetic foot exams," thereby directly contradicting the level of limitation. (Tr. 18, 444, 448-49, 451, 455).

After conducting an extensive review of the entire record, the ALJ properly concluded that Plaintiff's medically determinable impairments were nonsevere. The ALJ was not required to reiterate the prior paragraphs in the ALJ's decision in support of this conclusion. *See Crum v. Comm'r of Soc. Sec.*, No. 15-3244, 2016 WL 4578357, at *7 (6th Cir. Sept. 2, 2016) ("Elsewhere in her decision, the ALJ laid out in detail the treatment records that showed that Crum could return to normal work activity. . . . No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion.") (citing *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014)). The Sixth Circuit "'has consistently stated that the Secretary is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (citation omitted); *accord Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 472 (6th Cir. 2014); *see* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [the Commissioner] will give that medical opinion.

19

The better an explanation a source provides for a medical opinion, the more weight [the Commissioner] will give that medical opinion.").

Here, the ALJ sufficiently gave good reasons for discounting Dr. Bal's opinion as Dr. Bal's limitations were not only inconsistent with his own medical findings but also with the medical record cited and thoroughly discussed by the ALJ as well. *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) (substantial evidence supported ALJ's decision to accord minimal weight to treating physician's opinion where the physician's "treatment notes did not demonstrate a basis for concluding that [plaintiff] had marked to extreme limitations in numerous areas of work-related mental functioning," and where the treating physician's "conclusions were contradicted by other evidence in the record"). The ALJ previously noted that in January 2014, Plaintiff reported to Dr. Bal that he was doing well, and the record showed that Plaintiff's activities consisted of cleaning the house, mowing the lawn, sweeping the floors, shopping in stores, using a checkbook, washing clothes, vacuuming, making beds, handling money, cooking, working under cars, doing handyman work, driving sometimes eight hours for work, taking trips to the mountains with his wife in their trailer, and being able to up to thirty pounds comfortably. The ALJ also considered the opinions of the State agency consultants. (Tr. 18, 48-50, 60-63). "State agency medical and psychological consultants . . . are highly qualified physicians [and] psychologists . . . who are also experts in Social Security disability evaluation,' and whose findings and opinions the ALJ 'must consider . . . as opinion evidence." *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 712 (6th Cir. 2013) (citation omitted). It is the function of the ALJ to resolve the conflicts between the medical opinions. *Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013) ("In a battle of the

experts, the agency decides who wins. The fact that [the claimant] now disagrees with the ALJ's decision does not mean that the decision is unsupported by substantial evidence.").

Based upon a review of the record, the Magistrate Judge concludes that the ALJ properly evaluated Dr. Bal's opinion, gave good reasons for discounting Dr. Bal's opinion, and those reasons are supported by substantial evidence, and that the ALJ properly considered the medical evidence and the record as whole in determining that Plaintiff did not have a severe impairment or combination of impairments. Accordingly, the Magistrate Judge concludes that the ALJ's conclusions are supported by substantial evidence.

## IV. CONCLUSION AND RECOMMENDATION

For the reasons explained above, the Magistrate Judge **RECOMMENDS** that Plaintiff's motion for judgment on the administrative record (Docket Entry No. 19) be **DENIED**, and the Commissioner's decision be **AFFIRMED**. The parties have fourteen (14) days of being served with a copy of this Report and Recommendation to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 142, *reh'g denied*, 474 U.S. 111 (1986); *see Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011).

**ENTERED** this 10th day of September, 2019.

/s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge

21